CITY OF OWOSSO *v.* BARBER ASPHALT PAVING CO.

1. MUNICIPAL CORPORATIONS—BOND OF INDEMNITY—INTERPRETATION.
   Defendant gave the plaintiff city a bond to indemnify it
   against any liability for infringing the patent of a third
   party who threatened to enjoin the laying of a pavement,
   and executed a further undertaking against the cost of
   maintaining an asphalt pavement. Litigation commenced
   by the third party resulted in an adverse judgment on an
   appeal to the U. S. Circuit Court of Appeals taken by the
   complainant who was awarded costs of both courts. Plain-
   tiff paid the costs of the appellate proceedings, but not
   those of the lower court, as they were not taxed. In
   other litigation that arose over the liability of defendant
   for failure to perform its agreement for maintenance the
   city prevailed. Later it executed a release to defendant
   growing out of the liability of the paving company upon
   its contract for improving and maintaining the streets
   and defendant was to waive its right of appeal; and was
   to be released from any liability present or prospective
   growing out of the improvement of either of the streets.
   When the costs were finally taxed in the Federal court,
   defendant claimed it was discharged from liability. *Held,*
   that the release was intended to cover nothing but the
   controversy which had arisen over the contract to main-
   tain the pavement, that the bond against infringement was
   not released or discharged, and defendant should reim-
   burse plaintiff for the taxable costs in the case.

2. SAME—COSTS—INTEREST—FEDERAL COURTS.
   Interest on a judgment in the United States District Court,
   covering the costs of a proceeding in equity which had
   been reversed on appeal was properly allowed from the
   date of judgment until the taxation of the said costs. U.
   S. Comp. Stat. 1913, § 1605. But in Michigan courts a
   different rule prevails. 2 Comp. Laws, § 10308. Cf. 2
   Comp. Laws, § 4865.[1]

   ---

   [1]Repealed, but substantially re-enacted by the judicature act.
   3 Comp. Laws 1915, § 14465.

Error to Shiawassee; Gilday, J., presiding. Submitted October 19, 1915. (Docket No. 156.) Decided June 2, 1916.

Assumpsit by the city of Owosso, a municipal corporation, against the Barber Asphalt Paving Company, a corporation, and another, for the recovery of costs paid by plaintiff in a suit in which defendants indemnified plaintiff against loss. Judgment for plaintiff on a verdict directed by the court. Defendants bring error. Affirmed.

*Chapman, McNamara & Matthews* and *Morris M. Townley,* for appellants.

*Leon F. Miner* and *Seth Q. Pulver,* for appellee.

BIRD, J. We are asked by defendants to review a judgment recovered by plaintiff under the direction of the court for $1,842.54 on account of certain costs which the city became liable to pay in another suit in which defendants indemnified the city against loss.

The history of the transactions out of which plaintiff's claim grows shows that in February, 1903, the defendant Barber Asphalt Company was the successful bidder for the contract to construct certain pavement for the city of Owosso. Before the contract was closed the city was advised by Warren Bros. Company that the pavement proposed to be constructed by the Barber Company was an infringement of a patent owned by it, and in the event that it was constructed, it would look to the city for damages. In order to indemnify the city against loss on account of this claimed patent, the Barber Company executed an additional bond. One was a maintenance bond, agreeing to care for the pavement for a series of years; the other was a bond indemnifying the city against loss on account

of said claimed infringement. The condition of this bond provided that:

"The condition of this obligation is such that the said principal, the Barber Asphalt Paving Company, having been awarded a certain contract by the city of Owosso to pave Washington street from the Shiawassee River bridge south to the south line of Howard street, and Main street from the Shiawassee River bridge west to the Michigan Central Railroad, with bituminous macadam, and the city of Owosso having received information that the said city might be proceeded against by some other company or companies on account of the using by said the Barber Asphalt Paving Company some certain material, formulas and patents, and said city be put to cost and expense on account of the using of such pavement to be laid by the Barber Asphalt Company: Therefore, in consideration of the lettering [letting] of the contract this day executed by said city to the said the Barber Asphalt Paving Company, the said the Barber Asphalt Paving Company agrees to keep harmless said city from any expenses, judgment, attorney fees, or costs that it may have to pay on account of granting of said contract and the use of said pavement, and agrees to pay any costs or expenses arising from injunction or litigation."

The contract was closed with the Barber Company, and the pavement was constructed. In March, 1904, suit was instituted in the Federal court against the city by the Warren Bros. Company. The Barber Company assumed the defense of this suit in accordance with its agreement. Defendant was successful in the district court, but Warren Bros. Company prevailed in the Court of Appeals (*Warren Bros. Co.* v. *City of Owosso*, 166 Fed. 309 [92 C. C. A. 227]), and was awarded costs of both courts. The Barber Company paid the judgment for damages and the judgment for costs in the Court of Appeals, but not the costs of the district court, because they were not yet taxed. Following this litigation a controversy arose between the

city and the Barber Company in which the city claimed
damages by reason of its failure to maintain the pave-
ment in accordance with its contract.   This matter
later got into the courts, and the city was awarded a
judgment for $7,245.   The Barber Company was about
to take an appeal from this judgment, when a com-
promise was effected by which the Barber Company
paid the city $6,000, and waived its right of appeal.
When this settlement took place, a release was executed
by the city dated the 27th of November, 1911.   As this
controversy must turn upon the construction of this
release, we herewith give it in detail:

"Memorandum of agreement between the city of
Owosso and the Barber Asphalt Paving Company.

"Whereas, heretofore, on or about March 23, 1903,
a contract was executed between the parties hereto
wherein the Barber Asphalt Paving Company agreed
to pave and keep in repair for the period of eight (8)
years West Main street, in the city of Owosso, from
the Michigan Central Railroad tracks to the Shiawas-
see River bridge, and South Washington street from
the bridge over the Shiawassee river south to Howard
street; and

"Whereas, the city of Owosso subsequently com-
menced suit against the Barber Asphalt Paving Com-
pany on said contract, which cause is known as the
'City of Owosso v. Barber Asphalt Paving Co. and the
National Surety Co., being cause No. ...... on the
docket of the United States Circuit Court for the East-
ern District of Michigan, Northern Division; and

"Whereas, a judgment has been rendered in said
cause against the defendants; and

"Whereas, it is now desired that the Barber As-
phalt Paving Company should waive its right of ap-
peal from said judgment, it being the intention of the
parties hereto to amicably adjust all rights growing
out of said contract of every kind whatsoever:

"Now, therefore, it is agreed that the Barber As-
phalt Paving Company, on or before December 1, 1911,
shall pay to the city of Owosso the sum of six thousand
dollars ($6,000); and in consideration of the foregoing

said city agrees to enter full satisfaction of said judgment, including costs, and to discharge the Barber Asphalt Paving Company from all liability whatsoever growing out of the contract for the improvement and maintenance of said streets, and both of them. It is distinctly understood that the payment of said sum and the waiver of the right of said Barber Asphalt Paving Company to appeal from said judgment shall constitute a full release of said Barber Asphalt Paving Company from any liability, present or prospective, growing out of the improvement of either of the streets above mentioned, or growing out of the obligation of said Barber Asphalt Paving Company to keep said streets in repair.

"In witness whereof the parties have caused their corporate names to be affixed by their proper officers and agents this 27th day of November, A. D. 1911."

Subsequent to this, and in October, 1913, the Warren Bros. Company taxed their costs in the district court against the city. The city made demand upon the Barber Company to pay these costs in conformity with its bond of indemnity, but it refused to do so, claiming that the release which was executed in November, 1911, absolved it from any further duty in the premises. This suit was then instituted to recover on the bond.

The question for solution is whether the bond given to the city to protect it against an infringement suit was discharged by the release executed by the city under date of November 27, 1911. In its dealings with the Barber Company the city demanded and received two bonds. One had reference to the maintenance of the pavement, and the other was to protect the city against the patent claims of Warren Bros. Company. When the threatened patent suit materialized, the Barber Company took charge of the litigation for the city and paid the judgment for damages and the costs of the Court of Appeals, in accordance with its agreement, and evidently both parties thereafter regarded

that phase of the matter at an end. Then came the litigation in which the city claimed certain damages growing out of a failure of the Barber Company to properly maintain the pavement. For such failure a judgment was recovered by the city. It was then incumbent on the Barber Company either to satisfy the judgment or take an appeal. At this juncture of affairs the matter was compromised by the city accepting something less than its judgment and by the Barber Company waiving its right of appeal. This was the controversy which was disturbing the minds of the parties when the release was executed, and was undoubtedly the only matter of difference which was considered when the compromise was effected. No other controversy between them was pending so far as the parties knew. Obviously both parties regarded the infringement suit as "water that had run by the wheel." This view is further enforced by the fact that the preamble of the release refers to the agreement to maintain the pavement, the suit for damages on account thereof, and the judgment resulting therefrom. No reference is made to the infringement suit, nor to any unsettled questions growing out of it. The terms of the compromise and the wording of the release tend to show that the thing which was uppermost in their minds was the suit in which judgment had been rendered for the city. These considerations lead to the conclusion that nothing else was intended to be covered by the release except the differences which had grown or might grow out of its contract to construct and maintain the pavement. But it is said that certain language of the release is broad enough to cover and carry with it a discharge of the patent bond. Reference is made to the following excerpts from the release:

"The intention of the parties hereto to amicably ad-

just all rights growing out of said contract of every kind whatsoever."

And it was agreed that the city should "discharge the Barber Asphalt Paving Company from all liability whatsoever growing out of the contract for the improvement and maintenance of said streets."

And that the paving company should be released "from any liability, present or prospective, growing out of the improvement of either of the streets above mentioned."

The words "growing out of said contract" obviously meant the contract providing for the construction and maintenance of the pavement. The agreement to indemnify the city against loss on account of an infringement suit was not a part of the contract, which obligated it to build and maintain the pavement, but was an agreement held out by the Barber Company for the purpose of inducing the city to award to it the contract. The other general language quoted from the release is followed by restricted words which clearly show that it had reference only to the construction and maintenance of the pavement. We find no trouble in reaching the conclusion that nothing was intended to be covered by the release except matters of difference which had or might grow out of the construction and maintenance of the pavement.

Another question is raised. It is claimed the trial court was in error in allowing interest on the costs from the date of the judgment until they were taxed, which was nearly four years afterward. The reason advanced is that the costs are unliquidated until they are taxed. At the time the judgment was rendered for damages a judgment was also rendered for the costs of both the appellate and the district court. If this were a question arising in the State courts, it would be foreclosed by our statute and the construction which this court has given to it. 2 Comp. Laws,

§§ 4865, 10308; *Hayden* v. *Hefferan.* 99 Mich. 262 (58 N. W. 59).

Section 966, U. S. Comp. Stat. 1901 (1 U. S. Comp. Stat. 1913, § 1605), appears to provide for interest on judgments in civil cases recovered in the circuit or district court, where the laws of the State in which the court is held permits of it. This would appear to justify the trial court in allowing interest.

The judgment must be affirmed, with costs of this court to the plaintiff.

STONE, C. J., and KUHN, OSTRANDER, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.